UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ATLANTIC RECORDING CORPORATION; ATLANTIC RECORDS GROUP LLC; WARNER RECORDS INC.; ASYLUM WORLDWIDE LLC; BAD BOY RECORDS LLC; RHINO ENTERTAINMENT COMPANY; RHINO ENTERTAINMENT LLC; SPINNIN RECORDS B.V.; WARNER MUSIC INTERNATIONAL SERVICES LIMITED; WARNER MUSIC LATINA INC.; GENE AUTRY'S WESTERN MUSIC PUBLISHING CO.; UNICHAPPELL MUSIC INC.; W CHAPPELL MUSIC CORP.; WARNER CHAPPELL MUSIC, INC.; and WARNER-TAMERLANE PUBLISHING CORP.

      Plaintiffs,

 vs.

VITAL PHARMACEUTICALS, INC. d/b/a BANG ENERGY, JACK OWOC and DOES 1-10,

      Defendants.

## COMPLAINT

Plaintiffs Atlantic Recording Corporation, Atlantic Records Group LLC, Warner Records Inc., Asylum Worldwide LLC, Bad Boy Records LLC, Rhino Entertainment Company, Rhino Entertainment LLC, Spinnin Records B.V., Warner Music International Services Limited, Warner Music Latina Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (collectively, "Plaintiffs"), by and through their attorneys, allege as follows:

### INTRODUCTION

1. All Plaintiffs are related affiliates of Warner Music Group Corp. ("WMG"), one of the world's largest music entertainment companies. Through its affiliated recorded music and music publishing companies, including Plaintiffs, WMG produces, manufactures, distributes, sells, and licenses a legion of iconic and popular sound recordings and musical compositions.

These works include legendary sound recordings and musical compositions of the past, as well as many of today's biggest hits.

2. Defendant Vital Pharmaceuticals, Inc. d/b/a Bang Energy ("Bang") markets, sells, and distributes energy drinks, sports and nutrition supplements, apparel, and accessories, and claims to be "the nation's leading energy and lifestyle brand."[1]

3. Defendant Jack Owoc ("Owoc," and collectively with Bang and Does 1-10, "Defendants") is Bang's founder, CEO, Chief Scientific Officer, and owner.

4. Defendants have achieved widespread commercial success by infringing Plaintiffs' copyrighted sound recordings and musical compositions on a massive scale.

5. Defendants have largely eschewed traditional advertising, relying instead upon promotion of Bang's products through social media websites and mobile applications such as Instagram, TikTok, and Facebook.

6. Defendants' primary use of these platforms is to post or facilitate the posting of videos demonstrating use of Bang's products. These videos (each, a "Bang Video," and collectively, the "Bang Videos") feature popular sound recordings and musical compositions as integral parts of the presentation; indeed, there is typically no speaking or sound in the videos *other than* the music integrated into the video.

7. While these social media "commercials" have been instrumental to Bang's success, Defendants have not paid to use the sound recordings and musical compositions that are featured in them. Defendants have misappropriated *nearly two hundred* of Plaintiffs' most popular and valuable sound recordings and musical compositions (the "Copyrighted Musical Works"), including sound recordings and musical compositions featuring such chart-topping and award-winning artists as Bruno Mars, Cardi B, Dua Lipa, Jack Harlow, Lizzo, Saweetie, and Van Halen. Bang has used the Copyrighted Musical Works to drive sales to Bang and increase Bang's brand awareness and profile without any compensation to Plaintiffs.

---

[1] *See* https://bangenergy.com/about/ (last visited August 26, 2022).

8. As part of their infringing marketing efforts, Defendants have partnered with "influencers" – individuals who create infringing Bang Videos and post those videos on their own pages, some of which Defendants then repost on Bang's social media pages. Defendants compensate these influencers with free product, commissions, discounts, and/or direct monetary payment, sometimes tied to Bang's sales of the product(s) featured in the Bang Videos.

9. Plaintiffs' sound recordings and musical compositions, including the Copyrighted Musical Works, are protected by copyright law, which grants the copyright owner the exclusive right to, among other things, reproduce, distribute, and create derivative works of those copyrighted works, to publicly perform musical compositions, and to digitally transmit sound recordings to the public. An important portion of Plaintiffs' return on their investment in sound recordings and musical compositions, which they share with their exclusive recording artists and songwriters, comes from licensing sound recordings and musical compositions to others who use Plaintiffs' musical works in videos, films, television shows, commercials, video games, and on social media, with the glaring exception of Defendants, who have done so without a license.

10. Defendants' conduct, in which they take and exploit Plaintiffs' valuable intellectual property without any compensation to Plaintiffs or their respective recording artists and/or songwriters, has caused Plaintiffs substantial and irreparable harm. Plaintiffs bring this action to obtain redress for Defendants' infringement of Plaintiffs' valuable rights and to prevent further violations of those rights.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), insofar as this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

13. The Court has personal jurisdiction over Defendants because, among other things: (a) Bang is a Florida corporation with its principal place of business in this state and this District; (b) on information and belief, Owoc is domiciled in this state and this District; (c) Defendants

have been doing business continuously in and maintain a regular presence in this state and this District; (d) a substantial part of the wrongful acts occurred within this state and this District; and (e) the effects of Defendants' unlawful conduct are directed toward and felt in this state and this District.

## THE PARTIES

**Plaintiffs**

14. Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New York.

15. Plaintiff Atlantic Records Group LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

16. Plaintiff Warner Records Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

17. Plaintiff Asylum Worldwide LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

18. Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

19. Plaintiff Rhino Entertainment Company is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

20. Plaintiff Rhino Entertainment LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

21. Plaintiff Spinnin Records B.V. is a company organized and existing under the laws of the Netherlands, with its principal place of business at Marathon 4, Hilversum, The Netherlands.

22. Plaintiff Warner Music International Services Limited is a limited liability company organized and existing under the laws of England and Wales, with its principal place of business at 27 Wrights Lane, London, England.

23. Plaintiff Warner Music Latina Inc. is a Delaware corporation with its principal place of business at 555 Washington Avenue, Miami Beach, Florida.

24. Plaintiff Gene Autry's Western Music Publishing Co. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

25. Plaintiff Unichappell Music Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

26. Plaintiff W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

27. Plaintiff Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

28. Plaintiff Warner-Tamerlane Publishing Corp. is California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

**Defendants**

29. Defendant Vital Pharmaceuticals, Inc. d/b/a Bang Energy is a Florida corporation with its principal place of business at 1600 North Park Drive, Weston, Florida.

30. Defendant Jack Owoc is the founder, CEO, Chief Scientific Officer, and owner of Bang, and a citizen of Florida.

31. Defendants Does 1 through 10 own, operate or are affiliates, agents, or employees of Bang, and/or are otherwise responsible for and proximately caused and are causing the harm and damages alleged in this Complaint. Plaintiffs are presently unaware of the true names and/or the involvement of Defendants sued herein by the fictitious designations Does 1 through 10, and for that reason, sue them by those designations. Plaintiffs will seek leave to amend this pleading to identify those Defendants when their true names and involvement in the infringements and other wrongful conduct hereinafter described are known.

## DEFENDANTS' INFRINGING CONDUCT

32. Bang sells energy drinks, nutrition supplements, apparel, and accessories. It was founded in 1993 by Owoc, who remains its CEO.

33. In recent years, Bang has experienced extraordinary growth. Bang's energy drinks are now the third highest-selling brand of energy drink in the United States, and Bang achieved net sales of approximately $2.37 billion and gross profits of approximately $1.3 billion between 2017 and 2021 (over half of which has been achieved since early 2020).

34. Key to Bang's growth and success has been Defendants' use of social media platforms, including most notably TikTok and Instagram, to promote Bang's products:

- Bang's TikTok account (username @bangenergy) has approximately 1.5 million followers and 4.4 million likes.
- Owoc's TikTok account (username @bangenergyceo) separately has in excess of 850,000 followers and has garnered more than 2 million likes.
- Bang's Instagram account (username @bangenergy) has 2.3 million followers.
- Owoc's Instagram account (username @bangenergy.ceo) separately has 1.1 million followers.
- Defendants' Facebook account (username @BANGenergy) has over 104,000 followers and nearly 100,000 likes.
- Bang uses several additional social media accounts to promote its energy products, including TikTok accounts with the usernames @redline.energy, @stoked.beverage, and @noofuzion, and Instagram accounts with the usernames @redline_energy, @stokedbeverage, and @noofuzion, among many others.

35. Video "commercials" posted to these accounts have been essential to Defendants' success. Indeed, virtually every article written about Bang references Bang's social media presence as one – if not <u>the</u> – reason for Bang's massive growth. *See, e.g.*, "How Bang Energy's flashy, neon world of influencers conquered TikTok," *Morning Brew* (available at https://www.morningbrew.com/daily/stories/bang-energy-conquered-tik-tok) (noting that "[t]he beverage company has leveraged social media fame into millions in sales"); "How Bang Energy Drink Influencers Tap Into Gen Z to Generate $300 Million in Sales," *Extole* (available at https://www.extole.com/blog/how-bang-energy-drink-influencers-tap-into-gen-z-to-generate-

300-million-in-sales/) (reporting that Bang achieved record sales in 2020 through its social media/influencer marketing strategy, "while spending just $2,200 on traditional media"); "Why Bang Energy Is Pioneering Influencer Marketing," *Asian Blurb* (available at https://www.asianblurb.com/bang-energy/) (noting that "influencer-based projects have given the Bang brand its social media edge").

36. The Bang Videos rely heavily on commercial music – including the Copyrighted Musical Works – as a critical element in promoting Bang's products. The Bang Videos typically depict individuals showcasing one or more of Bang's energy drinks or supplements, synchronized to an audio track of a popular commercially available sound recording and musical composition. The audio tracks generally run the full length of the Bang Videos and the Bang Videos typically include the most familiar portion of the featured sound recording and musical composition.

37. Many of these Bang Videos were initially created by social media influencers – third parties who have garnered a substantial audience of "followers," and whom Bang compensates by, among other things, providing free, new, or yet-to-be-released products that the influencers can feature in their videos and/or by providing monetary compensation either directly or through commissions and/or rebates. In addition to actively supporting the creation and posting of these Bang Videos to the influencers' own social media accounts, Defendants review, select, and repost certain of the influencer-created Bang Videos on Defendants' own social media pages.

38. Among Defendants' influencer collaborators are well-known individuals such as Michael Le, who has 51.9 million TikTok followers, and Q Park (nee Joyce Tanner), who has 33.8 million TikTok followers, both of whom have created videos that infringe Copyrighted Musical Works, as well as micro-influencers known to "sport vibrant outfits with the Bang logo and create fun dance videos or skits with the products."[2]

---

[2] *See* https://neoreach.com/bang-energy-campaign-teardown/ (last visited August 26, 2022).

39. Bang seeks and maintains its relationships with these social media influencers through, among other things, its "Bang Influencers" Marketing Program.[3] The "Bang Influencers" are tasked with developing and posting "unique and remarkable content across all social media platforms."[4] Bang has written agreements with at least some of these third parties – and is willing to pay significant sums for influencer videos.[5] In turn, "Bang owns the videos that Bang Influencers create under their agreement, either through a work for hire arrangement or assignment to Bang." *UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339, at *2 (S.D. Fla. July 11, 2022) ("*UMG*"). "Under the terms of Bang's agreements with the Influencers, the Influencers are subject to Bang's supervision, direction, and control with respect to the promotion of Bang." *Sony Music Entertainment v. Vital Pharms., Inc.*, No. 21-CV-22825-WPD, slip op. at 4-5 (S.D. Fla. Sept. 14, 2022) ("*Sony*").

40. As a condition for compensation, "Bang instructs influencers to submit their videos to Bang's Influencer Program auditioning team with links to any music, and it's the auditioning team's responsibility to ensure that the Bang Videos conform to Bang's Social Media Guidelines." *UMG*, 2022 WL 2670339, at *2. To that end, Bang employs professional staff – the "Influencer Program" team – whose responsibilities include reviewing and selecting those videos and working with and overseeing the influencers with whom Bang partners, which includes advising on content. *Id*.

41. Bang's Social Media Guidelines "define what Bang Influencers must include in their videos, including consuming the product on camera, ensuring that the logo is facing the camera, and what to wear." *Id.* at *3. The Social Media Guidelines also "require Bang

---

[3] *See* https://bangenergycasting.com/what-does-it-take/ (last visited August 26, 2022); *see also* https://www.linkedin.com/in/isabel-bolivar-40b5b8148/ (listing the various roles in Bang's Influencer Program, including "Program Manager" and "Recruitment Manager") (last visited August 26, 2022); *see also* https://www.linkedin.com/in/jasmine-jane-mellor-421093166/ (listing various roles in Bang's Influencer Program, including "Influencer Recruitment Coordinator") (last visited August 26, 2022).
[4] *See* https://bangenergycasting.com/what-does-it-take/ (last visited August 26, 2022).
[5] *See* https://www.insider.com/tana-mongeau-youtuber-said-she-turned-down-2-million-from-bang-energy-2019-11 ("YouTuber Tana Mongeau told her subscribers that she turned down a $2 million sponsorship deal from the drink company Bang Energy.") (last visited August 26, 2022).

Influencers to 'tag' Defendants in their TikTok posts 'in order to receive compensation.'" *Id.* Bang "insists that it is 'really important' that Bang Influencers tag Bang and Owoc in their videos so that Bang stays 'relevant with [its] fans.'" *Id.*  Notably, Bang's Social Media Guidelines for 2020, 2021, and 2022 do not prohibit the use of copyrighted music in videos posted by the Bang Influencers. *Id.*

42. The Bang Videos routinely infringe WMG's copyrights in the Copyrighted Musical Works.  For example, Figure 1 is a screen capture from a Bang Instagram post that contains a video featuring "Rock Yo Hips" by WMG recording artist Crime Mob.  The video shows a lineup of various flavors of Bang energy drink, while the Bang influencer dances and lip synchs along to the lyrics "thirty-two flavors" and "raspberry, grape, cherry" – all of which are Bang flavors:



FIGURE 1

43. Similarly, Figure 2 is a screen capture from one of Owoc's Instagram posts featuring "Cupid Shuffle" by WMG recording artist Cupid.  The video depicts two Bang influencers, wearing Bang clothing and in front of a Bang-decorated jeep, dancing the "Cupid Shuffle," a dance made popular by the infringed WMG recording:

9



FIGURE 2

44. Likewise, Figure 3 is a screen capture from a Bang TikTok post featuring the WMG musical composition "Holiday" performed by Lil Nas X. The video promotes "holiday shoot ideas" while the influencers go thrift store shopping for a holiday outfit:



FIGURE 3

45. Figure 4 is a screen capture from a Bang Instagram post promoting Bang's "Bang Shot" beverage, featuring models posing with and drinking Bang Shots, which uses the WMG musical composition "Shots" performed by LMFAO and Lil Jon; the corresponding Instagram post includes a "limited offer" promoting a discounted price for Bang Shots as well as free Bang merchandise to purchasers:



FIGURE 4

46.     Recognizing the importance of the music to the social media posts, Defendants often specifically identify the featured sound recording and/or musical composition, as reflected in the examples shown in Figure 2 (calling out Defendants' unauthorized use of WMG's sound recording "Cupid Shuffle" embodying Cupid's performance) and Figure 3 (calling out Defendants' unauthorized use of WMG's musical composition "Holiday" performed by Lil Nas X).

47.     Likewise, the Bang Videos routinely identify and promote the particular Bang products that are being showcased and/or specifically call out and promote other Bang products, services or specials.  For example, Figure 1 (featuring unauthorized use of WMG's sound recording "Rock Yo Hips" by Crime Mob) and Figure 2 (featuring unauthorized use of WMG's sound recording "Cupid Shuffle" by Cupid) call out and tag the Bang energy drink NooFuzion and Figure 4 (featuring unauthorized use of WMG's musical composition "Shots" performed by LMFAO and Lil Jon) promotes a "limited offer" on Bang Shots.

48.     Defendants have generated global brand awareness for Bang and billions of dollars in sales through the ubiquity and effectiveness of the infringing Bang Videos, many of which have received millions of views.

49. Defendants achieved that success through blatant, willful, and repeated copyright infringement of content owned by record labels and music publishers, including infringement of Plaintiffs' most popular and valuable sound recordings and musical compositions. Indeed, although Defendants routinely and prominently feature WMG's Copyrighted Musical Works in Bang Videos, they have paid *nothing* for the right to use those works. Instead, they simply stole the Copyrighted Musical Works and reaped the benefits of their use without ever accounting to WMG.

50. Attached as Exhibit A is an initial list of sound recordings and musical compositions of which the identified Plaintiff is an owner or exclusive licensee in the United States of rights under copyright, which rights have been infringed by Defendants. Each listed sound recording and musical composition either: 1) is registered in the United States Copyright Office; or 2) is a sound recording fixed before February 15, 1972, and included on a schedule filed with the Copyright Office pursuant to the Orrin G. Hatch-Bob Goodlatte Music Modernization Act. Plaintiffs' investigation continues, and discovery is likely to reveal additional infringements of Plaintiffs' copyrighted sound recordings and musical compositions. Plaintiffs intend to seek leave to amend this Complaint at an appropriate time to provide an expanded list of works infringed by Defendants.

51. Moreover, Defendants' infringement was clearly willful. Among other things, the social media platforms on which the infringing Bang Videos were posted expressly state that users have no right to infringe music, particularly in connection with commercial activities.

52. For example, the Instagram Terms of Use incorporate Music Guidelines, which are maintained in the "Legal" section of the Meta website. Those Music Guidelines expressly provide as follows: "Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."[6] These specific prohibitions have been incorporated in the Instagram and Meta Terms of Use since at least May 2018.

---

[6] *Terms of Use*, Instagram, http://help.instagram.com/581066165581870 (incorporating Music Guidelines) (last visited August 26, 2022); *Music Guidelines*, Facebook, https://www.facebook.com/legal/music_guidelines (last visited August 26, 2022).

53. Similarly, the TikTok Terms of Service unequivocally state that no rights are granted respecting use of sound recordings and musical works:

> NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE.[7]

The foregoing language has been included in TikTok's Terms of Service since at least February 2019.

54. Moreover, since at least August 2020, TikTok has affirmatively required end-users (such as Defendants) to confirm, before posting a video, that they "have received all necessary rights (including publishing rights and master recording rights) to use any music in [the] video":



FIGURE 5

55. The posting of Bang Videos to the social media accounts of Bang and its influencers, despite these express prohibitions, is the essence of willful infringement.

---

[7] *Terms of Service*, TikTok, https://www.tiktok.com/legal/terms-of-service?lang=en (last visited August 26, 2022).

56. In April 2021, WMG first discovered the extensive infringement of the Copyrighted Musical Works in Defendants' social media videos when record companies and music publishers affiliated with Universal Music Group ("UMG"), another major music company, sued Defendants in this Court.[8] Shortly thereafter, on August 3, 2021, record companies affiliated with Sony Music Entertainment ("Sony"), another major music company, separately filed suit against Defendants in this Court.[9]

57. On July 9, 2021, WMG demanded in writing that Defendants cease and desist from their infringement of WMG's Copyrighted Musical Works. Defendants' infringement nonetheless persisted, *even in the face of two lawsuits and WMG's cease-and-desist letter*. Although Defendants eventually disabled access to certain infringing Bang Videos, other infringing Bang Videos identified in WMG's cease-and-desist letter remained up for over a year. Moreover, even after receiving WMG's cease-and-desist letter, Bang posted multiple new Bang Videos featuring the same Copyrighted Musical Works previously identified. Defendants' continued and additional infringement following receipt of WMG's cease-and-desist letter (not to mention the lawsuits filed by UMG and Sony) is further compelling evidence of willfulness.

58. On July 11, 2022, U.S. District Judge William P. Dimitrouleas granted UMG partial summary judgment in its action against Defendants, finding it "undisputed that Bang posted 140 TikTok videos utilizing portions of [UMG's] copyrighted works," and concluding that Defendants were liable for direct copyright infringement as a matter of law. *See UMG*, 2022 WL 2670339, at *2. Similarly, on September 14, 2022, Judge Dimitrouleas granted Sony partial summary judgment in its action against Defendants, concluding that Defendants were liable for both direct and vicarious copyright infringement as a matter of law. *See Sony*, slip op. at 15, 24.

### COUNT I: COPYRIGHT INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

59. Plaintiffs incorporate paragraphs 1 through 58 of this Complaint as if fully set forth herein.

---

[8] *UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV.
[9] *Sony Music Entertainment v. Vital Pharms., Inc.*, No. 21-CV-22825-WPD.

60. Defendants' creation, posting/reposting, and/or streaming of the Bang Videos infringe Plaintiffs' copyrights in the Copyrighted Musical Works. Among other things, Defendants have unlawfully reproduced, prepared derivative works from, distributed, publicly performed, and/or publicly performed by means of a digital audio transmission the copyrighted works listed on Exhibit A in violation of 17 U.S.C. § 106(1), (2), (3), (4) and/or (6).

61. Defendants' acts of infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

62. As a direct and proximate result of Defendants' infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

63. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

64. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured by monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### COUNT II:  CONTRIBUTORY INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

65. Plaintiffs incorporate paragraphs 1 through 58 of this Complaint as if fully set forth herein.

66. As detailed above, the third-party influencers who created Bang Videos have likewise infringed Plaintiffs' copyrights in the Copyrighted Musical Works, and Defendants are liable as contributory copyright infringers for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as contributory copyright infringers by

making the Bang Videos available to the users and subscribers of the social media platforms on which the Bang Videos were posted.

67. By promoting and/or assisting with the creation of the infringing Bang Videos and/or by causing them to be copied, made available, and transmitted over Defendants' social media accounts referenced above, Defendants materially contribute to the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the copyrighted works contained in the Bang Videos, including but not limited to the Copyrighted Musical Works listed in Exhibit A.  Defendants have actual and constructive knowledge of such infringement, including actual or constructive knowledge that no Plaintiff granted the rights to include such Copyrighted Musical Works in the Bang Videos.  In addition, Defendants have induced such infringement, including by promoting such infringement through the compensation paid to social media collaborators and other influencers, reposting the infringing videos, and calling out sound recordings and musical compositions used in the infringing Bang Videos.

68. Defendants' acts of contributory infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

69. As a direct and proximate result of Defendants' contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).  In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

70. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

71. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured by monetary damages.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502,

Plaintiffs are entitled to a permanent injunction prohibiting the contributory infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## COUNT III: VICARIOUS INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

72. Plaintiffs incorporate paragraphs 1 through 58 of this Complaint as if fully set forth herein.

73. As detailed above, third-party influencers who created Bang Videos have likewise infringed Plaintiffs' copyrights in the Copyrighted Musical Works, and Defendants are vicariously liable for the infringing acts of these influencers. Additionally, or alternatively, Defendants are liable as vicarious copyright infringers by making the Bang Videos available to the users and subscribers of the social media platforms on which the Bang Videos were posted.

74. Defendants have exercised the right, ability, and authority to control and supervise the placement of the Bang Videos on the social media platforms referenced above. Defendants also have the ability to remove the Bang Videos from each platform. Defendants receive a direct financial benefit from the infringing reproduction, preparation of derivative works from, distribution, and/or public performance of the copyrighted works contained in the Bang Videos, including but not limited to the Copyrighted Musical Works listed in Exhibit A, including (among other financial benefits) increased brand recognition and product sales.

75. Defendants' acts of vicarious infringement are knowing, deliberate, willful, and in utter disregard for Plaintiffs' rights.

76. As a direct and proximate result of Defendants' vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to their actual damages, including Defendants' profits from infringement, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b). In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum statutory damages in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

77. Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

78. Defendants' conduct is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot be fully compensated or measured by monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the vicarious infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a) for a permanent injunction requiring that Defendants, and their officers, agents, employees, attorneys, and others in active concert or participation with each or any of them, cease infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of, any of Plaintiffs' copyrights protected by the Copyright Act, whether now in existence or hereafter created;

(b) for Plaintiffs' actual damages and Defendants' profits from infringement, pursuant to 17 U.S.C. § 504(b), in amounts to be proven at trial, or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(c), for maximum statutory damages in the amount of $150,000 per infringed work, or such other amounts as may be proper under 17 U.S.C. § 504(c);

(c) for Plaintiffs' costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4), (5) and otherwise;

(d) for prejudgment and post-judgment interest; and

  (e)  for such other and further relief as the Court may deem just and proper.

Date:  September 15, 2022

                By: */s/ Ian M. Ross*
                  IAN M. ROSS
                  iross@sidley.com
                  Fla. Bar No. 091214
                  STEPHANIE PERAL
                  speral@sidley.com
                  Fla. Bar No.  119324
                  SIDLEY AUSTIN LLP
                  1001 Brickell Bay Drive, Suite 900
                  Miami, Florida 33131
                  Telephone: +1 305 391 5100

                  Rollin A. Ransom (*pro hac vice* to be filed)
                  rransom@sidley.com
                  Kristina Martinez (*pro hac vice* to be filed)
                  kmartinez@sidley.com
                  SIDLEY AUSTIN LLP
                  555 West Fifth Street, Suite 4000
                  Los Angeles, CA 90013
                  Telephone: +1 213 896 6000

                  *Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

Date: September 15, 2022

By: */s/ Ian M. Ross*
Ian M. Ross
*Attorney for Plaintiffs*